UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HEATHER JUDY,

                Plaintiff,                    Case No. 3:15-cv-349

vs.

COMMISSIONER OF                    District Judge Thomas M. Rose
SOCAL SECURITY,               Magistrate Judge Michael J. Newman

                Defendant.

---

## REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE; AND (2) THIS CASE BE CLOSED

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and thus unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 10), the administrative record (docs. 7, 8),[3] and the record as a whole.

I.

A.     **Procedural History**

Plaintiff filed for DIB and SSI asserting disability as of August 1, 2008. PageID 175-85. Plaintiff claims disability as a result of a number of impairments including, *inter alia*, an

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920[,] respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

affective disorder, anxiety disorder with features of social phobia and agoraphobia, attention deficit disorder, and substance abuse. PageID 502.

After initial denials of her applications, Plaintiff received a hearing before ALJ Irma J. Flottman on June 12, 2012. PageID 70-101. The ALJ issued a written decision on June 22, 2012 finding Plaintiff not disabled. PageID 57-65. The Appeals Council denied Plaintiff's request for review, and Plaintiff timely filed a complaint in this Court. PageID 46-48; *see Judy v. Colvin.*, No. 3:13-cv-257, 2014 WL 1599562, at *1 (S.D. Ohio Apr. 21, 2014). On May 9, 2014, Judge Rice adopted Judge Ovington's Report and Recommendation vacating the Commissioner's non-disability finding -- based upon the ALJ's improper analysis of Plaintiff's medical source opinions -- and remanded the case. PageID 641-69. Thereafter, Plaintiff was given a seconde administrative hearing before ALJ Elizabeth A. Motta on March 18, 2015. PageID 525-56.

ALJ Motta issued a written decision on July 31, 2015, finding Plaintiff not disabled. PageID 498-516. Specifically, ALJ Motta's findings were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since August 1, 2008, the alleged disability onset date (20 CFR 404.1571, *et seq.,* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: affective (mood) disorder, anxiety disorder with features of social phobia and agoraphobia, attention deficit disorder, history of substance (cocaine) abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity ["RFC"] to perform a full range of work at all defined exertional levels subject to the

following non-exertional limitations: no climbing ladders, ropes or scaffolding; no exposure to hazards such as unprotected heights or moving machinery; simple repetitive tasks; low stress work (*i.e.*, no strict production quotas or fast pace and only routine tasks with few changes in work setting); no contact with the public as part of job duties; and only occasional contact with co-workers and supervisors, including no tasks involving teamwork.

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1977. At age 38 she is classified as a 'younger individual' for Social Security purposes (20 CFR 404.1563 and 416.963).

8. The claimant has a 9th-grade or 'limited' education as defined for Social Security purposes (20 CFR 404.1564 and 416.964).

9. The claimant does not have 'transferable' work skills within the meaning of the Social Security Act (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant was not 'disabled,' as defined in the Social Security Act, from August 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 498-515.

Plaintiff did not seek Appeals Council review of this second ALJ decision. *See* 20 C.F.R. § 404.984(d) (in a case remanded by a Federal Court, "[i]f no exceptions are filed and the Appeals Council does not assume jurisdiction of [the] case, the decision of the [ALJ] becomes the final decision of the Commissioner after remand"). Plaintiff now timely appeals ALJ Motta's July 31, 2015 decision. *See id*; *see also* 20 C.F.R. § 404.984(c).

### B.    Evidence of Record

In her decision, ALJ Motta set forth a detailed recitation of the underlying medical evidence in this case.  PageID 502-09.  Plaintiff, in her Statement of Errors, also summarizes the evidence.  Doc. 9 at PageID 1414-18.  The Commissioner, in response to Plaintiff's Statement of Errors, defers to the ALJ's recitation of the evidence and presents no objection to Plaintiff's summary.  Doc. 10 at PageID 1434.  Except as otherwise noted herein, the undersigned incorporates the summary of evidence as set forth by ALJ MOtta and Plaintiff.

## II.

### A.    Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.3d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference."  *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B.    "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. § 423(d)(1)(A).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are "medically determinable"; expected to result in death or which have lasted or can be expected to last for a continuous period of not less than twelve months; and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful work" that is available in the regional or national economies.  *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.    Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work

-5-

experience, and RFC -- do significant numbers of other jobs exist in
the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818
(S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the
Social Security Act. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

## III.

In her Statement of Errors, Plaintiff sets forth a number of alleged errors, all contending
that ALJ Motta failed to appropriately weigh the medical evidence of record and erred in not
relying on the opinion of treating psychiatrist Ellen W. Ballerene, M.D. Doc. 9 at PageID 1419.
Having carefully reviewed the administrative record and the parties' briefs, and also having
carefully considered the ALJ's analysis leading to the non-disability finding here at issue, the
Court finds the ALJ carefully and reasonably reviewed the record, properly weighed the opinions
of Plaintiff's treating psychiatrists, appropriately considered the medical evidence at issue (and
applied the 'good reasons' rule with respect to the medical evidence by Plaintiff's treaters), and
accurately determined Plaintiff's RFC. Thus, as more fully explained herein, the Court finds the
ALJ's decision supported by substantial evidence and affirms the ALJ's non-disability finding.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source
opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio
Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (2)
examiners; and (3) record reviewers. *Id.*

Treaters are entitled to the greatest deference because they "are likely to be . . . most able
to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring
a unique perspective to the medical evidence that cannot be obtained from the objective medical
findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2). A

treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).[4]

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id.* (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Record reviewers are afforded the least deference and these "'non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id.* "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id.* (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

---

[4] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Here, Plaintiff had two treating psychiatrists -- Ellen W. Ballerene, M.D., and Ramakrishna Gollamudi, M.D. On appeal, Plaintiff contends that ALJ Motta erred in not relying on Dr. Ballerene's conclusions regarding her disabling limitations. Doc. 9 at PageID 1420-27. Plaintiff saw Dr. Ballerene on a monthly basis from September 2011 to May 2014. PageID 385, 429-30, 851-940, 960-1129. Dr. Ballerene repeatedly noted that Plaintiff appeared "distracted," "irritable," "depressed," and "anxious" with a "constricted" affect. *See* PageID 460-76, 485. From January 2012 through November 2012, she assigned Plaintiff a GAF score ranging between 50-54.[5] PageID 433-60, 866-940.

With regard to functional limitations, Dr. Ballerene issued reports in which she opined that Plaintiff was "unemployable" and had "moderate" to "marked"[6] limitations in her mental

---

[5] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13-cv-257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice"). As set forth in the DSM-IV, a GAF score of 41-50 indicates "[s]erious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job)." *Id.* A GAF score of 51-60 is indicative of "[m]oderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers)." *Id.*

[6] Whereas "mild" and "moderate" functional limitations are generally considered "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *Lankford v. Sullivan*, 942 F.2d 301, 307 (6th Cir. 1991).

functional abilities.  PageID 429-30, 1130-31.  Specifically, in November 2011, Dr. Ballerene found Plaintiff "markedly" impaired in her ability to maintain attention and concentration for extended periods; work in coordination, with or in proximity to, others without being distracted; complete a normal workday and work-week without interruption from psychologically-based symptoms; interact appropriately with the public; and get along with coworkers without exhibiting behavioral extremes.  PageID 429.  In September 2012, Dr. Ballerene opined that Plaintiff could not participate in any educational or vocational training because of "severe anxiety, crying spells, panic attacks, [and] trouble leaving the home."  PageID 1133.  In May 2013, Dr. Ballerene completed a questionnaire setting forth similar limitations and conclusions as those set forth in November 2011.  PageID 1130.

The ALJ gave Dr. Ballerene's opinion "no weight whatsoever," because her conclusions were "neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record."  PageID 505.  In so concluding, the ALJ relied primarily on, among other reasons, the fact that Dr. Ballerene's opinions were not supported by, and were inconsistent with, all other medical source opinion evidence of record.  *See* PageID 506.

Most significantly among those opinions relied upon by the ALJ was one offered by Plaintiff's previous treating psychiatrist, Dr. Gollamudi, who saw Plaintiff on a monthly basis from January 2009 to May 2010, and then again from August 2010 to January 2011.  PageID 286-305, 347-75.  Like Dr. Ballerene, Dr. Gollamudi noted that Plaintiff appeared anxious, depressed, and irritable at times.  PageID 347, 351, 355, 359, 372-73, 422-26.  On other occasions, however, Dr. Gollamudi noted: no signs of anxiety or mood symptoms; normal

behavior and cognition; normal judgment; organized and goal directed thought processes; and full affect. PageID 347, 351, 353, 358-59, 372.

In March 2011, Dr. Gollamudi opined that Plaintiff was not functionally impaired; had normal cognitive functioning, normal insights and judgment; and a "fair ability to sustain concentration and task persistence with timely completion." PageID 338-46. Dr. Gollamudi did conclude that Plaintiff was "not able to work in pressure, due to mood and symptom anxiety." PageID 338-46. Although ALJ Motta did not assign Dr. Gollamudi's opinion a specific weight,[7] it is evident from a review of her decision that she found Dr. Gollamudi's opinion deserved more "credence" than Dr. Ballerene's opinion. PageID 506. Certainly, ALJ Motta relied significantly on Dr. Gollamudi's opinion in forming Plaintiff's RFC and, therefore, it is evident that she assigned Dr. Gollamudi's opinion deferential, if not controlling weight. *See id.*

Plaintiff argues that Dr. Ballerene's opinion is entitled to controlling weight because it is supported by her clinical findings[8] and the clinical findings noted by other medical sources. Doc. 9 at PageID 1420. The Court disagrees with Plaintiff's contention. Plaintiff acknowledges that Dr. Gollamudi noted similar clinical findings, yet reached a wholly different conclusion based upon those findings. *See* PageID 340-41. Not only did Dr. Gollamudi reach a different opinion based upon substantially the same evidence, but other medical sources of record --

---

[7] An ALJ's failure to specifically undertake the controlling weight "two-step inquiry" for a treating physician can constitute harmless error when, "despite [the ALJ's] failure to comply with the terms of 20 C.F.R. § 404.1527(c)(2), [the ALJ] has otherwise met the regulation's goal." *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 380 (6th Cir. 2013).

[8] The Sixth Circuit concludes that "a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment" and "consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989) (citation and alterations omitted). Instead, with regard to mental health impairments, "clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Id.* (citation omitted). In other words, many times in the realm of mental health impairments, clinical observations made by mental health professionals serve as the only objective evidence available to substantiate the existence, persistence, and limiting effects of such impairments. *See id.*

namely examining psychologist Giovanni Bonds, Ph.D. and record-reviewing psychiatrists Larry Kravitz, Psy.D. and Aracelis Rivera, Psy.D.[9] -- gave opinions more consistent with Dr. Gollamudi's less restrictive conclusion. *See* PageID 313-19, 323-37, 340-41.

The undersigned is cognizant that, in assessing whether or not a treater's opinion is entitled to controlling weight, "the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). Here, however, the conflicting substantial evidence consisted not only of nontreating and nonexamining doctors, but of treating psychiatrist Dr. Gollamudi -- whom the ALJ gave deferential, if not controlling weight. *Cf. id*. Dr. Gollamudi's opinion is substantial evidence upon which the ALJ could rely in discounting the weight given to Dr. Ballerene's opinion. *Cf. id*. Further, the inconsistency between Dr. Ballerene's opinion and all other medical source opinions of record also provides substantial evidence upon which the ALJ could appropriately assign Dr. Ballerene's opinion little weight. *See* 20 C.F.R. § 404.1527(c)(4) (stating that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

The Court acknowledges that evidence of record exists upon which the ALJ could have rendered a decision in Plaintiff's favor. "[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the Court must give deference to ALJ's

---

[9] The undersigned finds no merit to Plaintiff's argument that the ALJ should have rejected the opinions of Drs. Kravitz and Rivera on the basis that their opinions predated Dr. Ballerene's opinion and other treatment notes of record. "[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016); *see also Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 248 (6th Cir. 2016). Here, the ALJ noted that, despite opinions having been provided in 2010, "subsequent evidence does not provide any compelling basis to show that there has been further deterioration in the claimant's mental conditions" since that time. *See* PageID 504. Having considered evidence post-dating these opinions, the ALJ did not commit error in this regard.

decision if it is supported by substantial evidence. *Blakley*, 581 F.3d at 406 (citations omitted). Finding substantial evidence in the record to support the ALJ's assessment of medical source opinions -- and thus her non-disability determination -- the undersigned overrules Plaintiff's alleged errors.

**IV.**

For the foregoing reasons, the Court finds Plaintiff's assignments of error unmeritorious.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED**;

2.  This case be **CLOSED**.

Date:  February 2, 2017                                s/ Michael J. Newman
                                                       Michael J. Newman
                                                       United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).  Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).